Francis THURMAN, Appellant,

v.

STATE of Missouri, Respondent.

No. 35210.

Missouri Court of Appeals,
St. Louis District,
Division One.

March 19, 1974.

Motion for Rehearing or Transfer Denied
April 8, 1974.

Motion for Transfer Granted by
Supreme Court
June 24, 1974.

Case Retransferred to Court of Appeals
Dec. 16, 1974.

Opinion Readopted Jan. 24, 1975.

James C. Jones, St. Louis, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard A. Heidenry, Mark A. Brown, St. Louis, for respondent.

KELLY, Judge.

Appellant appeals from the action of the trial court denying his motion to vacate, set aside or correct his conviction and sentence to life imprisonment upon a plea of guilty to the offense of murder in the first degree entered on November 16, 1936, in Division No. 11 of the Circuit Court of the City of St. Louis. Rules 27.25 and 27.26 V.A.M.R.

The grounds for appellant's motion were (a) that the plea of guilty was involuntarily entered because of threats by the Assistant Circuit Attorney and pressure applied upon him by his court appointed counsel and his father to enter a plea of guilty to the charge of murder in the first degree to avoid the death penalty; (b) that at the time he entered the plea of guilty his court appointed counsel was not present nor did the court appoint another attorney to represent him during the plea and sentencing; (c) that the court did not advise him of his constitutional rights before or after the entry of the plea of guilty and failed to ascertain whether his guilty plea was voluntary; (d) that the plea of guilty was equivocal because he was mentally incompetent to enter such a plea and the court knew of his possible insanity defense and

mental incompetence; and (e) that the record of sentencing reveals that he did not understand the nature of the charge nor the consequences of his guilty plea.

After appellant filed his motion on March 17, 1972, the trial court appointed counsel to represent appellant and on October 17, 1972, an evidentiary hearing was held with appellant present and assisted by appointed counsel. The appellant offered himself as a witness in his own behalf, introduced into evidence the report of the neuro-psychiatrist appointed by the court in the proceedings in 1936 prior to appellant's plea of guilty, and the entire court file in Cause No. 238, February Term, 1936, the murder first degree indictment file, and then rested. The State produced as witnesses the judge before whom the plea of guilty had been entered on November 16, 1936 and Mr. William F. Sindel, Esq., the counsel appointed by the court to represent the appellant in that case.

After the cause was heard on the evidence adduced, the trial court continued the cause to obtain the court records and on November 27, 1972, entered its order. The order of the trial court found: (1) that the plea of guilty entered by the petitioner was voluntary; (2) that petitioner understood the nature of the charge and the consequences thereof, and (3) that at the time of sentencing and the acceptance of the plea no attorney was present. The trial court thereupon ordered that "the Motion be sustained in part as set-forth in paragraph 8(b)[1] of his petition and that the sentence be vacated." Petitioner was ordered returned to court for a proper sentencing with counsel present. On December 1, 1972, appellant filed his motion for new trial and on February 16th, 1973, appellant, with counsel, appeared before the judge who presided at the evidentiary hearing and, after allocution, was sentenced to life imprisonment in accordance

---

1. Paragraph 8(b) of appellant's motion was that at the time he entered his guilty plea on November 16, 1936, his court-appointed counsel was not present at any time and the court did not appoint another attorney to represent him during the plea and sentencing.

with the "plea of guilty heretofore entered on the 16th day of November, 1936, to the charge of Murder in the First Degree."

On appeal the appellant presents two points as bases for reversal of the trial court's order. First, that the trial court erred in failing to find that his plea of guilty was invalid because, under the evidence, it was not "voluntarily and intelligibly" made with a full understanding of his legal rights, and Second, having found that he was without the presence of counsel at the time of his plea of guilty and sentencing, the trial court further erred in holding that his plea of guilty was nevertheless valid and the appellant was entitled only to resentencing.

After sentence the court may set aside the judgment and permit the movant to withdraw his plea of guilty only if such is necessary to correct manifest injustice. Rule 27.25, V.A.M.R. Rule 27.26(i) V.A.M.R. requires that if the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was illegal or otherwise subject to collateral attack, or that there was such a denial or infringement of the constitutional rights of the prisoner as to render the judgment subject to collateral attack, the court shall vacate and set aside the judgment and discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. Upon appeal our review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j) V.A.M.R.

The evidence in this case is that defendant was indicted on the charge of murder in the first degree allegedly perpetrated on one William Cullen on the 2nd day of March, 1936. Appellant was arrested approximately one week after the offense and confessed to the offense. According to his confession he killed Mr. Cullen, a St. Louis police officer, while appellant was attempting to "stick-up" the police officer who was seated in an automobile. At arraignment a plea of not guilty was entered for appellant and Mr. William Sindel, Esq., a member of the bar of the Circuit Court of the City of St. Louis, Missouri, was appointed by the court to represent him. Thereafter, Mr. Sindel consulted with the appellant on several occasions, and during these conversations appellant admitted the offense to Mr. Sindel and Mr. Sindel's investigation produced no evidence of any defenses available to the appellant. At the suggestion of appellant's father, Mr. Sindel obtained a neuro-psychiatric examination of the defendant by one Dr. Edmund F. Sassin, who submitted a report to the court and to Mr. Sindel that his examination revealed no evidence of mental disease and in his opinion the appellant at the time of the homicide was "well able to differentiate between right and wrong and to control his actions." Sometime during the criminal proceedings, but prior to the entry of the guilty plea, appellant's father retained two attorneys—Mr. Brady and Mr. Straub—to represent the appellant. Appellant advised Mr. Sindel that counsel had been retained and Mr. Sindel thereupon considered his appointment as counsel for the appellant terminated and did nothing further with respect to the case. Appellant, about two weeks prior to November 16, 1936, was interviewed by Mr. Straub in the City Jail. He advised Mr. Straub that he had shot the police officer during an attempted robbery. Mr. Sindel, Mr. Straub and his father encouraged appellant to plead guilty to the charge in the hope that he would thereby avoid the death penalty which they feared might be imposed by a jury if it found him guilty after a jury trial. Mr. Sindel was concerned by extensive news coverage of the event.

Appellant also testified that while he was confined in the City Jail the Assistant Circuit Attorney handling the prosecution of the charge came over to the jail and advised him that he, the Assistant Circuit Attorney, was going to see to it that appellant got the death penalty. During this

discussion only appellant and the Assistant Circuit Attorney were present.

He pleaded guilty because his father begged him to plead guilty and both Mr. Sindel and Mr. Straub told him to plead guilty.

On November 16, 1936, appellant was brought into court; neither Mr. Sindel nor Mr. Straub was there. He did not know Mr. Brady and had never seen him, but he had no counsel at this appearance in court. The judge asked him how he pleaded and he told him "guilty." The judge did not advise him of his legal rights to a jury trial, the right to have witnesses in his own behalf, the presumption of innocence, nor of the State's burden to prove him guilty beyond a reasonable doubt. The judge did not inquire whether his plea was influenced by promises or threats, advise him of the range of punishment, nor give him an opportunity to admit or deny any facts in support of the charge. The Assistant Circuit Attorney did not state the evidence the State had to prove the charge against him. Appellant testified that while he knew what he was charged with and that he could be sentenced to the death penalty, he did not know what other punishment could be assessed. He did not know what punishment he would receive upon entry of the guilty plea. He did know, however, that by pleading guilty a judgment would be entered against him and sentence would be imposed. Immediately after appellant announced that he was entering a plea of guilty, the judge "passed sentence on me," and he was removed from the courtroom. The entire plea process took "just a few minutes."

The judge before whom the plea was entered testified, understandably, that he had no independent recollection of this appellant nor the entry of the plea. He testified to the usual practice he followed in accepting a plea "back in those days" and stated that he never accepted a plea of guilty from any defendant unless his counsel was present in court at the time. He admitted that he did not make a lengthy inquiry of defendants entering guilty pleas at that time—"because we were not required to then." He always had the official court reporter present in court and recording a guilty plea; however, these proceedings were not transcribed. His court reporter at that time was a Mr. Mills who is now an invalid living in Florida. The court reporter's notes would reflect whether counsel was present. These notes, if still in existence, would be in a storeroom in the Civil Courts Building, but: "If you could find it over there, you're a good one."

During the evidentiary hearing the trial judge made the following inquiry of the appellant without objection:

"Q. On the 2nd day of March, you killed a person by the name of William Cullen?

A. Yes, sir.

Q. That was a policeman?

A. Yes, sir.

Q. Were you arrested on the scene?

A. No.

Q. How much time elapsed before you were taken into custody?

A. About a week.

Q. Did the police question you about this matter?

A. Yes.

Q. Did you make an admission to them at that time?

A. Yes.

Q. What was Officer Cullen doing at the time you took his life?

A. He was in an automobile and I tried to stick him up."

Defendant, who was 19 at the time he entered his plea of guilty, admitted that he had previously entered a plea of guilty to a

charge of burglary and larceny; when, was not developed in the evidence, but it was prior to November 16, 1936.

Sometime in June, 1966, appellant wrote to the clerk of the circuit court requesting copies of the indictment, sentence and judgment in his case in which he "was sentenced to life imprisonment for killing a police officer" so that he could prepare a petition to the Governor for Executive Clemency. This letter was filed in the office of the clerk of the circuit court for criminal causes on June 27, 1966. On July 25, 1966, the clerk of the circuit court for criminal causes, by letter, advised appellant that he could petition the court to order the preparation of the records he had requested and upon receipt of the order the documents would be furnished. On July 26, 1966, appellant wrote to the clerk of the circuit court for criminal causes advising him what he wanted, including: "What attorney represented me . . ." On July 28, 1966, appellant, apparently having received the clerk's letter of the 25th in the interim, responded by forwarding a "motion to obtain files and records" to the clerk. This motion was filed on July 29, 1966. It requested copies of the indictment, every order touching the case, the record made of his every appearance in court, the record made at the time his plea of guilty was entered, and of the sentence and judgment. In this motion appellant stated that he had been advised that his guilty plea was illegal and violative of Article One, Sec. 10 and 18(a) of the Constitution of the State of Missouri, V.A.M.S., and Amendments VI and XIV of the Constitution of the United States. He further

stated that he was without means to pay for these records and requested that the clerk of the court be ordered to furnish them without charge.

Thereafter, on August 8, 1966, the motion was sustained and the clerk of the court was ordered to forward copies of the records requested.

On July 28, 1968, appellant filed a motion to vacate sentence and judgment under Supreme Court Rule 27.26 which was sworn to before a Notary Public on July 24, 1968. In filing his motion appellant used a form furnished by the clerk of the court, pursuant to Rule 27.26(c). Paragraph 8 of the form requires that the petitioner "state concisely all the grounds known to you for vacating, setting aside or correcting your conviction and sentence." In paragraph 8 appellant, under oath, alleged seven different grounds for vacating, setting aside or correcting his conviction and sentence.[2] He did not allege as a grounds under paragraph 8 the absence of counsel at the time he entered his plea of guilty. Paragraph 9 of the form used by appellant requires that the movant "State concisely and in the same order the facts which support each of the grounds set out in (8), and the names and addresses of the witnesses or other evidence upon which you intend to rely to prove such facts." Nowhere in paragraph 9 is there any reference to absence of counsel. However, in paragraph 15 of the form where he is asked whether he was represented by an attorney at any time during the course of certain stages of the criminal proceedings he states that he did not have an attorney

---

2. The seven grounds alleged in paragraph 8 of the motion were: 1) his plea of guilty was entered as a result of coercion by way of fear and intimidation, 2) he was held for 11 days without a warrant and 56 days before presentment to the committing magistrate, 3) he was denied the right to a preliminary hearing, 4) he could not enter a plea with full knowledge of the consequences due to mental defect, 5) the court erred in accepting his plea of guilty before his competency had been ruled on at a hearing conducted for that purpose, 6) the indictment was faulty due to the fact that it rested largely on the confession made by the petitioner while gravely wounded and under the influence of drugs, and 7) he was not granted allocution at the time of pleading and sentencing.

at his arraignment and plea BUT *that he did have counsel at his sentencing.*[3]

On September 11, 1968, Mr. John C. Shepherd, an attorney, wrote to the appellant advising him that he had been appointed by the court to represent appellant in the 27.26 proceedings and in which he called attention to the fact that the appellant had failed to list the names and addresses of any of the witnesses whom he intended to call to prove the facts alleged as required by paragraph 9 of the motion. Mr. Shepherd enclosed in the letter three additional copies of the forms for the appellant and the only change in this motion was the addition of the name of a witness, one William Thurman, 636 East Red Bud Avenue, St. Louis, Missouri, appellant's father. In this form, sworn to before a Notary Public, appellant repeated his prior assertion that he had no counsel at arraignment or plea, but he did have counsel at sentencing.

A pre-trial conference was held on April 9, 1969, and the motion was set for an evidentiary hearing on May 23, 1969. On this latter date the appellant appeared with his court-appointed counsel. Mr. Shepherd stated to the court that "I have investigated same (the post-conviction motion) and have discussed it with Mr. Thurman, and he now has a statement he would like to make to the Court with reference to his motion at this time." Appellant thereupon took the stand and was interrogated by his court-appointed counsel without being sworn. When asked what action he would like for the court to take with respect to the motion he stated: "A. Well, I would like to have it set aside, because I am coming up for parole, but I don't think I could have my parole heard if I have this court procedure pending." The court inquired when his parole hearing was set, and ap-

pellant replied: "In October." He advised the court that he wanted to withdraw his motion at that time with leave to reinstate it if his parole was denied. Mr. Shepherd then stated that he wanted the record to show that appellant did feel he had a good chance for favorable action by the parole board and as a consequence did not want the motion pending and appellant "has suggested that I ask it be dismissed without prejudice with the right to refile it in the event it became necessary." Appellant then signed a minute memorandum wherein he requested dismissal of his motion under Rule 27.26 without prejudice. The court granted appellant leave to dismiss his motion without prejudice.

On or about November 18, 1971, appellant filed an application for a writ of mandamus in the Supreme Court of this State, against Hon. Daniel T. Tillman, Circuit Judge of the City of St. Louis, Missouri, seeking an order upon that judge to furnish appellant with a transcript of the taking of the guilty plea and sentencing, which, according to the application for the writ, he had requested on October 28, 1971. The necessity for this transcript was to aid him in the preparation of a postconviction proceeding under Rule 27.26. On November 26, 1971, appellant wrote to Judge Tillman enclosing a copy of the application for Writ of Mandamus and requesting that the judge or the clerk of the court advise him whether the transcript taken at the time of the sentencing and guilty plea was available or if it was impossible to obtain a copy of the proceedings. On December 17, 1971, Judge Tillman responded to the missive of November 26, 1971, advising the appellant that he had talked with the Clerk of the Supreme Court and had been informed that the application for writ of mandamus had been denied on December

---

3. Paragraph 15 of the form is as follows:
   "Were you represented by an attorney at any time during the course of
   (a) your preliminary hearing? 'No preliminary'
   (b) your arraignment and plea? 'NO'
   (c) your trial, if any?
   (d) your sentencing? 'YES'
   (e) your appeal, if any, from the judgment of conviction or the imposition of sentence? 'NO' "

13, 1971, and there was therefore no action required by him.

On February 9, 1972, appellant wrote to the clerk of the circuit court for criminal causes enclosing an original and two copies of a Motion to Vacate under Rule 27.26 V.A.M.R. In this motion, again on the appropriate form, for the first time, appellant set out in detail as one of the grounds for vacating of the conviction that his court-appointed counsel was not present when he entered his plea of guilty and the court did not appoint another attorney to represent him during the plea *and sentencing*. Also, in paragraph 15, he, for the first time, states that he never had an attorney at the sentencing.

This motion was filed in the Circuit Court on March 17, 1972, and is the basis for this appeal.

The evidence is that appellant did have assistance of counsel. He was interviewed by court-appointed counsel a number of times, his sanity was inquired into and the court-appointed psychiatrist found him sane and responsible for his acts. He was charged with murder in the first degree—a felony murder—and the only punishment legally possible upon conviction of that offense was life imprisonment or death. §§ 3982, 3984, RSMo 1929. The lengthy inquiries now conducted by courts in determining that a guilty plea is intelligently and voluntarily made were not in vogue at that time, nor were they required. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), was not then the law and it is not applied retroactively. Crego v. State, 447 S.W.2d 550, 553 (Mo.1967). Rule 25.04 V.A.M.R. was not in force. A judge was, nonetheless, not to receive a guilty plea unless he was convinced that it was voluntarily and intelligently proffered. State v. Stephens, 71 Mo. 535, 536 (1880). It was the custom then to rely on the competence of the counsel, court-appointed or employed, and his ethical standards. The court itself did not assume as active a part in the plea entry stage as it is required to do today.

■ While we recognize that the guilt or innocence of a movant in a 27.26 or 27.25 motion is irrelevant, State v. Reese, 481 S.W.2d 497, 500 [4] (Mo. banc, 1972), we are here faced with an appellant who waited some 33 years before he commenced a proceeding for postconviction review. Then, to gain an advantage in his application for parole, he, with advice of able counsel, obtained leave of court to dismiss his motion without prejudice. Obviously he was unsuccessful in his bid for parole. It was not until March 27, 1972, that he again sought review of his guilty plea.

The Supreme Court of this State in Flood v. State, 476 S.W.2d 529, 534 [4] (Mo.1972) recognizing the problem of stale motions filed pursuant to Rules 27.26 and 27.25 V.A.M.R., and the toll that time takes on the search for truth therein, said: "We note that the motion in this case was filed long after the death of the judge who accepted the pleas and more than 12 years after the sentences imposed. *A motion for leave to withdraw a plea of guilty after sentence should be filed within a reasonable length of time, taking into consideration the nature of the allegations of the motion . . . Whether a motion is timely is a question which must be determined on a case by case basis."* (Emphasis supplied).

And, at p. 529, the court said: "While we have not yet imposed an ironclad time limitation on withdrawal of pleas of guilty, we think the time lapse in filing a motion is a relevant factor to be considered in determining the merits." [4]

■ By the time appellant sought relief under Rules 27.25 and 27.26 V.A.M.R. in March, 1972, the judge who presided at the time the guilty plea was entered had retired from the Bench. Mr. Straub, one of

---

4. See also: Skaggs v. State, 476 S.W.2d 524, 528[7] (Mo.1972) [9½ years after guilty plea]; Donaldson v. State, 477 S.W.2d 84, 88[7] (Mo.1971) [22 years after guilty plea].

the hired counsel, was dead and Mr. Brady, the other, was physically incapable of appearing at the evidentiary hearing. The court reporter who recorded the proceedings was an invalid living in the State of Florida, and the likelihood of finding his notes and having them transcribed was concededly impossible. In a Rule 27.25 and 27.26 proceeding the burden of proving the grounds for relief are on the movant, and he must establish them by the preponderance of the evidence. Rule 27.26(f) V.A. M.R. After sentence, a court may, according to Rule 27.25, set aside the judgment and permit the defendant to withdraw his plea of guilty only if such is necessary in order to correct manifest injustice. The trial court has the right to reject testimony on behalf of the movant, even where there was no contrary evidence offered by the State at the hearing. Shoemake v. State, 462 S.W.2d 772, 775 [4] (Mo. banc 1971); Skaggs v. State, 476 S.W.2d 524, 527 [3] (Mo.1972).

Appellant's contention that he was denied the assistance of counsel in that his court-appointed counsel was not present at the time he entered his plea of guilty and was sentenced is the crucial issue in this case. His evidence in this respect is equivocal. On the one hand he testified at the evidentiary hearing that neither court-appointed counsel nor Mr. Straub was in attendance when he entered his plea of guilty and was sentenced. However, in the court file in this proceeding was a prior motion under oath seeking the same relief appellant now seeks wherein appellant stated that he did have counsel at his sentencing. He did state that he did not have counsel at his "arraignment and plea." As we construe this assertion, at the time appellant was arraigned on the indictment he did not have counsel, for it was at that time that the court entered a plea of not guilty for the appellant and appointed Mr. Sindel to represent him. If he had counsel at sentencing, he must have, of necessity, had counsel at the time he entered his plea of guilty, for, as he testified at the evidentiary hearing:

"Q. Tell the Court what Judge Kirkwood said to you when you came out there, what anybody said?

A. He said, 'How do you plead?'

Q. And what happened then?

A. I said, 'Guilty.'

Q. Then what happened?

A. He passed sentence on me.

Q. And what happened then?

A. Took me back out of the courtroom.

Q. How long were you in the courtroom that day?

A. Just a few minutes."

If the entire proceedings took "just a few minutes" and appellant had counsel at his sentencing as he stated under oath in his motion, it is inconceivable that he did not have counsel present when he entered his plea of guilty.

■ As previously stated our review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j) V.A.M.R. "Clearly erroneous" as that term is used in Rule 27.26(j) V.A.M. R., means that although there was evidence to support the trial court's finding, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Crosswhite v. State, 426 S.W.2d 67, 70 (Mo. 1968); Clayton v. United States, 302 F.2d 30, 35 (8th Cir. 1962). Applying this guage to the trial court's finding that the appellant did not have an attorney present at the time he entered his plea of guilty, we conclude that the evidence supports a finding that the appellant did not have *court-appointed counsel* present when he entered his plea of guilty. However, after an exhaustive review of the record and the post-conviction review file of which the trial court had judicial notice we find that the trial court's finding that *no counsel* was present was clearly erroneous. To so

find the trial court would have to have before it credible evidence that Mr. Straub, the hired counsel, was not present and in view of the entire record we conclude that this finding was not supported and we are therefore left with a definite and firm conviction that a mistake in this respect has been committed.

However, with respect to the finding of the trial court that appellant's guilty plea was voluntary and made with an understanding of the nature of the charge and the consequences thereof we find no error; nor do we find any "manifest injustice," as that term is used in Rule 27.25 V.A.M.R., which would require the trial court to set aside the judgment of conviction and permit the defendant to withdraw his plea of guilty entered on November 16, 1936.

We affirm.

DOWD, C. J., and SIMEONE, J., concur.